CONTRACTING PLUMBERS' ASSOCIATION OF ST. LOUIS, A CORPORATION, AND FENTON FOWLER, WALTER HEIL, HARRY F. CLUCAS, ARTHUR G. MAIER, ELMER ELS, D. C. CUNNINGHAM, WM. J. THOLE, WALTER J. WEIDEMANN, FRED F. REISEL, BERNARD BRAUN, FRANK W. LINEK, ALBERT C. MAYER, APPELLANTS, v. BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, AND J. HARRY POHLMAN, MRS. IRMA M. FRIEDE, CHARLES J. DYER, JOHN A. FLEISCHLI, JAMES J. FITZGERALD, WILLIAM SCHUMACHER, DR. RUDOLPH HOFMEISTER, DR. FRANCIS C. SULLIVAN, REV. C. OSCAR JOHNSON, DR. HERBERT O. WINTERER, FRED BECK AND ELMER M. PUTNEY, MEMBERS OF AND CONSTITUTING THE BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, AND JOSEPH P. SULLIVAN, COMMISSIONER OF SCHOOL BUILDINGS OF THE BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, RESPONDENTS.—194 S. W. (2d) 731.

St. Louis Court of Appeals. Opinion filed May 21, 1946.

*Suelthaus & Krueger* and *Albert D. Krueger* for appellants.

*James E. Garstang,* and *Emmet T. Carter* for respondents.

SUTTON, C.—This suit is brought by taxpayers of the City of St. Louis against the board of education and its members and the commissioner of school buildings of said city. The object of the suit is to compel the defendants to do all repair, alteration and con-

struction work on St. Louis school buildings, where the costs exceeds fifty dollars, or one hundred dollars in cases of emergency, through contracts made after advertisements and public lettings, and to set at naught certain rules adopted by the board.

The trial resulted in a judgment for defendants and plaintiffs appeal.

Plaintiffs contend that defendants in doing repair, alteration and construction work are acting in violation of certain provisions of the statute relating to school districts in cities of five hundred thousand inhabitants or over, and that certain rules adopted by the board of education are also in violation of the statute.

Section 10724, Revised Statutes 1939 (Mo. R. S. A.), provides that every city in this State having five hundred thousand inhabitants or over shall be and constitute a single school district, shall be a body corporate, and the supervision and government of public schools and public school property therein shall be vested in a board of twelve members, to be called and known as the board of education, and in a superintendent of instruction and a commissioner of school buildings; that said board of education shall, by and in said name, sue and be sued, purchase, receive, hold and sell property, and do all things necessary to accomplish the purpose for the attainment of which such school district is organized.

Section 10725 provides that the board of education shall have general and supervising control, governing and management of the public schools and public property in such city; shall exercise generally all powers in the administration of the public school system therein, appoint such officers, agents and employees as it may deem necessary and proper and fix their compensation; shall have power to make rules for the government, regulation and management of the public schools and school property in such city, to provide for special and standing committees, and to purchase and hold all property, real and personal, deemed by it necessary for the purpose of public education, and to build and construct improvements for such purposes.

Section 10731 provides as follows:

"The commissioner of school buildings shall be appointed by the board of education for a term of four years, during which term his compensation shall not be reduced. He shall devote all his time to the duties of his office, and shall be charged with the care of the public school buildings of such city, and with the responsibility for the ventilation, warming, sanitary condition and proper repair thereof. He shall prepare, or cause to be prepared, all specifications and drawings required, and shall superintend all the construction and repair of all of such buildings; shall make report each month to the board of education showing in detail the costs of repairs and other work for the previous month on each building, embodying therein

the amount of bills outstanding for work ordered by him, and stating specifically the cases where work was done, or ordered without public letting; shall superintend all the advertisements for bids and the letting of contracts; and shall, within the limits of appropriations theretofore made by the board of education for repairs, make all contracts for the repairs of school property except where the cost of such repairs shall exceed the sum of fifty dollars.''

Section 10733 is as follows:

''All contracts for the erection of school buildings and all contracts for repairs and alterations in school property exceeding the amount of fifty dollars shall be made by said board of education, after public letting, to the lowest responsible bidder complying with the terms of the letting. The necessary specifications and drawings shall be prepared for all such work, and bids therefor shall be solicited by such advertisement as the board of education may provide. All other work of construction and repairs shall be made directly by the commissioner of school buildings, as herein provided. For all work of construction and repairs authorized to be done directly by the commissioner of school buildings, he shall furnish the necessary specifications and drawings, except in cases of emergency, where the cost shall not exceed the sum of one hundred dollars, and shall solicit bids for such work as may be provided for by the board of education. No bids shall be entertained by the commissioner of school buildings which are not made in accordance with the specifications furnished by him, and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting: Provided, however, that the said commissioner shall have the right to reject any and all bids.''

Section 2 of rule 25 provides as follows:

''The Commissioner of School Buildings shall, in the name of the Board of Education, cause advertisements to be made for bids and the letting of contracts. All such advertisements shall be published in a daily newspaper in the City of St. Louis for at least five (5) days prior to the opening of the bids, except in matters of emergency requiring immediate attention, and in contracts not exceeding fifty dollars, in which cases bids may be solicited as hereinafter provided.''

Said section then further provides as follows:

''If the case admits of an advertisement for bids in a newspaper for one day, such advertisement shall be made, and in addition thereto, the Commissioner shall solicit bids directly from such persons as he may deem reliable and competent to do the work required. Should, however, the case not admit of as much delay as would be occasioned by such newspaper publication for one day, the same may be entirely dispensed with, but, instead thereof, the Commissioner shall cause to be posted, both on a bulletin board in his office and on the bulletin

kept for such purposes in the Master Builders' Exchange, notices soliciting immediate bids for the work and material required, and, in addition thereto, he shall solicit bids directly from such persons as he deems reliable and competent to do the work required. The contract may be awarded to the lowest bidder by the Commissioner himself if it involves an amount not exceeding fifty dollars. In other cases, if they are cases of emergency, and the contract involves an amount not exceeding five hundred dollars, the award shall be made by the Building Committee, and may be made in either case after the expiration of three hours after such notices are posted.''

Section 7 of rule 25 is as follows:

''In addition to the public advertisement elsewhere called for in these rules, the Commissioner of School Buildings shall cause notices of all work for which bids are demanded under this rule to be posted in his own office and in the Master Builders' Exchange of the City of St. Louis.''

Rule 33 is as follows:

''All assistants, deputies, engineers, janitors and other employees and agents engaged in the work of the Building Department, shall perform such services as may be designated by the Commissioner of School Buildings.''

It was stipulated at the trial that in the letting of contracts the board of education and the commissioner of school buildings had been and were then following the provisions of said section 2 of rule 25; that the commissioner of school buildings had been and was then following the provisions of rule 33; that he had been and was then employing carpenters, mechanics, plumbers, painters, and others skilled in the trades; that the members of the board of education for the past several years had approved budgets which provided wages for carpenters, mechanics, plumbers, painters, and other skilled tradesmen who were under the supervision of the commissioner of school buildings; that the carpenters, mechanics, plumbers, painters and other skilled tradesmen under the supervision of the commissioner of school buildings had been and then were attending to the alteration and repair work in some instances where the cost of such alterations and repairs exceeded the sum of fifty dollars where no emergency existed and in some instances where the cost of such alterations and repairs exceeded the sum of one hundred dollars in emergencies.

John P. Sullivan, the commissioner of school buildings, testified that he had been commissioner of school buildings for six years; that his duties as building commissioner were the designing and supervision of the construction of new buildings and the maintenance of buildings, including sanitation, heating, landscaping and ventilation; that the carpenters, bricklayers, plumbers, blacksmiths and other workmen came under his supervision; that there were cases of emergency where the cost of the work exceeded one hundred dollars that

came up from time to time, such as elevator repairs, fallen arches and furnaces, boilers, engine repairs, stoker repairs, plumbing repairs, damage by water, windstorm and fallen plaster; that these mechanics, such as plumbers, carpenters, steamfitters and electricians were principally engaged in maintenance work; that he had maintenance work that had to be done from day to day, like elevators and different parts of the property; that he had approximately 153 structures to maintain; that he received a thousand to fifteen hundred requisitions a month for repair, alteration and structural work that was handled by the mechanics and tradesmen that were employed by the board; that there were alterations to be made where it would be impossible to let contracts because he could not know the conditions until he actually got into the alterations; that these jobs where the board's employees are used do not run over $2,000 or $4,000 at the most; that $4,000 was the largest amount he had known of; that the number of tradesmen he had under his supervision employed by the board was approximately 160 of all trades; that they were paid the regular standard wage scale; that he has found that these jobs of alterations and maintenance can be done at a less cost by using the board's employees than by letting the jobs out by contract.

Plaintiffs contend that all work of construction, alteration and repair must be made by contract after public letting to the lowest responsible bidder where the cost exceeds fifty dollars, or in cases of emergency exceeds one hundred dollars, and that defendants are violating the provisions of the statute in following the rules adopted by the board.

This contention was well disposed of by the trial court, as follows:

"Section 10733, R. S. 1939, provides that all contracts for the erection of school buildings, and all contracts for repairs and alterations exceeding $50 in amount, shall be made by the Board of Education after public letting. Section 10731 provides that the commissioner of school buildings shall make all contracts for repairs not exceeding $50 in amount. Taken together these sections cover all contracts for work of construction and repair, but they do not require that all such work must be done by contract. On the contrary both sections contemplate that some work shall be done by the Commissioner directly. After providing that all contracts in excess of $50 shall be made by the Board, section 10733 states 'all other work' of construction and repair shall be made 'directly' by the Commissioner, and so far as this Court can perceive, does not limit the cost thereof. The phrase 'all other work' would seem to refer to all work for which the Board does not see fit to let a contract; 'directly' would seem to mean by direct action without an intermediary contractor. The reference to emergency work not in excess of $100 relates solely to the non-necessity of plans and specifications for work of that character. The provision that the Commissioner shall solicit bids for such work

as may be 'provided for' by the Board refers to work for which the Board may desire to let a contract, not to work done directly by the Commissioner, since no bids are required when no contract is let.

"The commissioner of school buildings testified it is sometimes impracticable and more expensive to have the work done by contract. The statute should not be construed to require the Board to adopt impracticable and expensive methods, unless no other construction is reasonably warranted.

"Paragraph 1 of Section 2, Rule 25, provides for five days notice in a daily newspaper except for work costing less than $50 and emergency work. This seems reasonable. Paragraph 2 of this section necessarily applies only to the work excepted in Paragraph 1, and appears to be reasonable when the cost is so small or an emergency exists.

"Section 7 merely requires an additional notice to that required by Section 2.

"It is the Court's opinion that the Board in its discretion may either contract for alterations and repairs or cause them to be made by its own employees, and that its rules providing for notice to bidders are reasonable."

This is in accord with the decisions in other jurisdictions under statutes similar to ours.

In Home Building and Conveyance Co. v. City of Roanoke (Va.), 20 S. E. 895, l. c. 899, the court said:

"It is, however, contended by appellant that because section 50 of the charter of Roanoke requires all contracts for the erection of public improvements or buildings within the jurisdiction of the city council to be let to the lowest responsible bidder, after notice, etc., all the acts and doings of the city in connection with the building or construction of the bridge approach in Randolph street are manifestly contrary to law and illegal—*ultra vires*.

"We see nothing in that clause of the charter which inhibited the city from constructing public buildings or improvements under direction of its own engineers and officers. It simply provides that when such buildings or improvements are let to contract, it shall be to the lowest bidder, and after advertisement, as provided. Any other construction of that provision would prove dangerous, if not injurious, to any city, since we see from this record that, if that construction had been followed, the approaches to the overhead bridges in the city of Roanoke would have cost the city $8,000 or $10,000 more than they will under the mode of construction adopted by the city"

In Perry v. City of Los Angeles (Cal.), 106 Pac. 410, l. c. 412, the court said:

"The charter provisions taken together undoubtedly require that wherever it is proposed to make an agreement for the purchase of

certain materials or supplies for a sum exceeding $500, or to make an agreement with another by which he is to furnish such labor for a sum of money exceeding $500, a written contract must be let and entered into in the manner prescribed. But do they require anything else? We are of the opinion that they do not, and are satisfied that they should not be construed as prohibiting the doing of public work by the city itself by day's labor.

"Provisions of the character of those contained in the Los Angeles charter are manifestly different from provisions requiring work to be done by contract, or to be let to the lowest bidder. According to the ordinary acceptance of the term 'doing work by contract,' it means the letting of the work, or some portion thereof, to some one who agrees to deliver the same completed for a specified price, and does not include the case of one who himself constructs an improvement by means of materials purchased directly by him and artisans and laborers directly employed and paid wages by him. . . . Of course, where a statute or charter declares that any work must be let to the lowest bidder, there is no possible basis for any other construction than one making bids and contracts imperative. The omission from the Los Angeles charter of any such provision as either of those discussed is most significant. If it had been intended to require that whenever a proposed improvement would cost more than $500, the work must be done 'by contract' let to the lowest responsible bidder, it would have been the simplest matter in the world to say so in plain terms, as has been said over and over again in other acts and charters. The failure to do so indicates that the framers of these charter provisions were guarding solely against the method of letting contracts for public work otherwise than to the lowest responsible bidder, after public notice of the work to be done thereunder; the object being to prevent favoritism in the matter of letting contracts and the payment of a greater price than the work was reasonably worth. There is nothing in the language used to indicate that it was designed to prevent the doing of the work by the city itself through the officers having such work in charge."

In Cooper v. City of Detroit (Mich.), 192 N. W. 616, l. c. 618, wherein the provisions of the city charter under review were very similar to the provisions of our statute, the court, after quoting with approval from the Home Building and Conveyance Company case and the Perry case, said:

"We find nothing in the charter of the city of Detroit which expressly or by implication prevents the city from using its own forces in performing the labor necessary for the construction of its municipal garage, though the cost of such labor should exceed $500. The city of Detroit has the power under its charter to construct public works or improvements where the amount to be expended exceeds $500 without the letting of contracts for the work. It may do such work

with its own forces under the direction and control of the commissioner of public works."

It appears to be the generally accepted rule that in the absence of a requirement to that effect, a municipality need not let public work to contractors, but may do it through its own officers, and that a charter provision requiring all contracts for public improvements to be let to the lowest responsible bidder does not prohibit the municipality from constructing the improvements under the direction of its own engineers and officers.

In the present case plaintiffs would have our statute read that all repairs and alterations costing more than fifty dollars, or more than a hundred dollars in cases of emergency, must be made by contract after public letting to the lowest responsible bidder. But that is not the way the statute reads. It is not the function of the court to re-write it.

The judgment of the circuit court should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.