MONTANA CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, a Montana Corporation, ASSOCIATED PLUMBING AND HEATING CONTRACTORS of Montana, a Montana Corporation, F. L. DYE COMPANY, a Montana Corporation, FRANK J. TRUNK and SON, INC., a Montana Corporation, BUDD PLUMBING and HEATING, INC., a Montana Corporation, ARTHUR L. STUART, doing business as BOZEMAN ELECTRIC and J. W. TSCHACHE and OTTLEY R. TSCHACHE, a Co-partnership, Plaintiffs and Appellants, v. STATE BOARD OF EDUCATION, an Administrative Agency of the State of Montana, Defendant and Respondent.

No. 10114.
Submitted May 2, 1960. Decided May 26, 1960.
352 Pac. (2d) 258.

John H. Risken. Helena, argued orally for appellants.

Forrest H. Anderson, Attorney General, Wayne E. Linnell, Asst. Atty. General for respondent. Wayne E. Linnell argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This action was commenced by certain plumbing, heating and electrical contractors, as taxpayers and as contractors, and by two corporations representing other similarly situated, to determine whether section 82-1131, R.C.M. 1947, prohibits the performance of construction and repair work exceeding a cost of $500 by maintenance and student employees at state educational institutions under the supervision of the State Board of Education.

The amended complaint charges that section 82-1131, requires that all construction or repairs at state educational institutions

in which costs exceed $500 must be accomplished by public contractors who have been awarded a construction contract through public competitive bidding. It charges further that construction and maintenance in excess of $500 has been performed in the past at institutions of the University of Montana which was not put up for public bid. Plaintiffs pray that the meaning of section 82-1131 be declared, that the court order defendant Board to cease and desist from engaging in the practice complained of, and that the Board be permanently enjoined from continuation of such practices.

A general demurrer to the complaint was sustained. When plaintiffs elected to stand on their complaint and refused to plead further, judgment was entered against them. The district court, in its judgment for defendant, held that section 82-1131 does not require the Board to enter into contracts by advertising for bids upon work to be done upon its behalf when the cost of such work exceeds $500.

Section 82-1131, R.C.M. 1947, provides:

"It shall be unlawful for the board of examiners or any offices, departments, institutions, or any agent of the state of Montana acting for or in behalf of said state to let any contract for the construction of buildings or the alteration, repair and improvement of buildings and grounds on behalf of and for the benefit of the state where the amount involved is five hundred dollars ($500.00) or more without first advertising in at least one (1) issue each week for three (3) consecutive weeks in two (2) newspapers published in the state, one (1) of which must be published at the seat of government, and the other in the county where the work is to be performed calling for sealed bids to perform such work and stating the time and place, when and where such bids will be considered."

Plaintiffs would have this statute be construed to prohibit state maintenance employees from performing any construction or repair work on state educational buildings, the cost of which would exceed $500. The Board, on the other hand, argues

that it is only when a contract is actually let, and only *if* a contract is let, that such must be advertised and bids called for.

It is well-established that when the terms of a statute are plain, unambiguous, direct, and certain, the statute speaks for itself, and there is nothing for the court to construe. In re Kesl's Estate, 117 Mont. 377, 385, 161 P.2d 641. In our view, the words of section 82-1131 are plain, direct, unambiguous and certain. It simply means that *it is unlawful to let a contract* for the construction, repair or improvement of public buildings where the cost *exceeds $500 without first advertising* in two newspapers for at least three consecutive weeks and calling for bids. The statute deals with the *procedure* to be followed *when* and *if* a contract is to be awarded. It does not set forth the instances when a contract must be let, nor does it prohibit state officers and employees from performing work on state buildings. If the Legislature had intended this statute to be a general statute requiring that all construction, repair or improvement of state properties be done only ''by contract'' let to the lowest responsible bidder, such could have been spelled out expressly in plain language.

The legislature has expressed this intent with respect to specific buildings, and where such intent has been expressed. the legislature has used plain language. With respect to the capitol addition, section 78-409, R.C.M. 1947, provides:

''The state board of examiners shall call for bids for the construction of said building and let contracts for the same, all in accordance with the laws of the state of Montana.''

With reference to the state laboratory, section 78-603 has the identical language.

Section 78-703, referring to the state capitol, provides:

''The state board of examiners shall call for bids for the repair of said building and let contracts for the same, all in accordance with the laws of the state of Montana.''

With reference to the governor's residence, section 78-803 provides:

"The state board of examiners shall call for bids for such construction and furnishing and let contracts for the same, all in accordance with the laws of the state of Montana."

The same issue was before the California Supreme Court in Perry v. City of Los Angeles, 157 Cal. 146, 151, 106 P. 410, 412. The court, speaking of the charter of the City of Los Angeles said: "The charter provisions taken together undoubtedly require that wherever it is proposed to make an agreement for the purchase of certain materials or supplies for a sum exceeding $500, or to make an agreement with another by which he is to furnish such labor for a sum of money exceeding $500, a written contract must be let and entered into in the manner prescribed. But do they require anything else? We are of the opinion that they do not, and are satisfied that they should not be construed as prohibiting the doing of public work by the city itself by day's labor.

"* * * where a statute or charter declares that any work must be let to the lowest bidder, there is no possible basis for any other construction than one making bids and contracts imperative. The omission from the Los Angeles charter of any such provision as either of those discussed is most significant. *If it had been intended to require that whenever a proposed improvement would cost more than $500, the work must be done 'by contract' let to the lowest responsible bidder, it would have been the simplest matter in the world to say so in plain terms,* as has been said over and over again in other acts and charters. The failure to do so indicates that the framers of these charter provisions were guarding solely against the method of letting contracts for public work otherwise than to the lowest responsible bidder, after public notice of the work to be done thereunder; the object being to prevent favoritism in the matter of letting contracts and the payment of a greater price than the work was reasonably worth. There is nothing in the language used to indicate that it was designed to prevent the doing of

the work by the city itself through the officers having such work in charge.''

More recently, in Contracting Plumbers' Ass'n of St. Louis v. Board of Education, 238 Mo.App. 1096, 1104, 194 S.W.2d 731, 735, it was said:

''It appears to be the generally accepted rule that in the absence of a requirement to that effect, a municipality need not let public work to contractors, but may do it through its own officers, and that a charter provision requiring all contracts for public improvements to be let to the lowest responsible bidder does not prohibit the municipality from constructing the improvements under the direction of its own engineers and officers.''

To the same effect are Home Building & Conveyance Co. v. City of Roanoke, 91 Va. 52, 20 S.E. 895, 27 L.R.A. 551; Cooper v. City of Detroit, 222 Mich. 360, 192 N.W. 616.

Pursuant to section 75-201, R.C.M. 1947. the Board has the authority to erect, enlarge and improve the facilities of the state educational institutions. Section 82-1131 does not limit the Board in the use of maintenance employees of state institutions in the construction, maintenance or repair of such facilities. It operates only to prescribe a procedure to be followed in the event the Board proposes to award contracts to public contractors.

The cases of Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 99 N.W. 603, and Reiter v. Chapman, 177 Wash. 392, 31 P.2d 1005, 92 A.L.R. 828, cited by appellants are not contrary to our view. In both cases, contracts were in fact let, but proper procedure was not followed. Neither case held that public employees were prohibited from performing the work themselves.

The cases of Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, and Foxen v. City of Santa Barbara, 166 Cal. 77, 134 P. 1142, also cited by appellants, are inapplicable here since they involved either a statute or a city charter which ex-

pressly required that public work be done by contract let to the lowest responsible bidder.

For the reasons stated, the judgment is affirmed.

MR. JUSTICES ADAIR, ANGSTMAN and CASTLES concur.