SALLY DOULL, ARTHUR DOULL, MARGARET E. GRA-
HAM, THOMAS G. GRAHAM, HELEN JONES, ALBERT
L. JONES, LORNA C. TOUGAS, RICHARD N. TOUGAS,
YVONNE MARCEAU, MARGUERITE G. DODGE, H. R.
DODGE, MARY G. DIETERICH, JOHN H. DIETERICH
AND RUBY M. SMITH, PLAINTIFFS AND APPELLANTS, *v.* C. D.
WOHLSCHLAGER, DEFENDANT AND RESPONDENT.

No. 10379

Submitted May 30, 1962. Decided January 11, 1963.

377 P.2d 759.

Smith, Boone & Rimel, Missoula, Russell E. Smith (argued orally), Missoula, for appellants.

Donovan Worden, Jr., Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from an order of the district court for Missoula County, Montana, denying a petition for a mandatory injunction and overruling the plaintiff's motion for a new trial.

In this cause, a rehearing was granted, and it appearing that the opinion heretofore promulgated on September 28, 1962, should be redrafted, the same was hereby withdrawn, new counsel allowed to reargue the case, and the following opinion substituted therefor.

The purpose of the action was to compel the defendant to remove a 44 x 80 foot galvanized steel building from his premises.

The land involved is located in the Rattlesnake Valley, a rapidly growing residential suburb of the City of Missoula. Petitioners are owners of various residential properties situated west of Raymond Street and west of the land owned and occupied by the defendant. The defendant's land consists of some forty acres; three acres on the valley floor, and the remaining acreage on the steep slopes of Mount Jumbo to the east.

The land located on the valley floor is shaped somewhat like a long narrow triangle. The slopes of Mount Jumbo to the east, and Raymond Street to the west, form the long sides of the triangle.

On the southernmost end, or apex, the defendant maintains

his residence. Immediately to the north and along the slopes of Mount Jumbo are located several old wooden buildings. The residence and wooden buildings have been on the land for many years. Most of the land on the valley floor is laid out in Lots 7 through 24, of Block 22 of the Platted Park Addition to Missoula.

In the past, the defendant has used one of the wooden buildings for part-time automobile repair work. While the defendant was regularly employed at one of the local auto dealerships, he supplemented his income by purchasing older automobiles and repairing them at home for later resale. There was some evidence that his total income from the part-time repair work amounted to approximately $5.000 during the period from 1946 to April 1955. The defendant also had a hobby of restoring antique autos. The evidence is clear that the lots on which the home and the wooden buildings rested were generally strewn with parts of the cars that the defendant was working on. There is some slight evidence that the storage may have taken place on the more northern lots in question as well.

In 1950, the defendant began using the platted lots to the north plus the hillside acreage for grazing horses. Though the number of horses grazed varied, the defendant generally grazed but two horses.

On April 12, 1955, the defendant applied for and received a used car dealer's license from the State Board of Equalization. On May 1, 1955, he commenced operation of an auto repair shop on a full time basis. Such operation was conducted in the wooden buildings north of the residence.

At about the same time, pursuant to Chapter 41 of Title 16, R.C.M.1947, at least 60 percent of the freeholders of the Rattlesnake Valley petitioned the Missoula County Commissioners for the formation of a Planning and Zoning District. The *defendant was among those who signed the petition.*

Pursuant to the statute, notice was posted, a hearing was

held, and on May 16, 1955, Missoula County Planning and Zoning District No. 1 was created and ordinances applicable thereto were formulated. The defendant's full time use of the southern or apex land thus antedated the zoning ordinances by sixteen days. The entire district was zoned residential. The ordinances which are important for this decision are as follows:

"10. Any agricultural, horticultural, or stock-raising enterprise may be carried on within the district and in connection therewith buildings such as barns, silos, granaries, machine shops, sheds, milking parlors and the like may be maintained, altered or erected; provided however that such buildings be reasonably designed for use in connection with the purposes specified in this sub-paragraph 10, and be not used for any other purpose.

"11. Any building presently located within the boundaries of Missoula Planning and Zoning District Number 1 may be maintained, and any lawful use presently being made of the lands in the said district may be continued whether the same be in conformity with the provisions of this regulation or not; provided, however that if any non-conforming use is discontinued for a period of two years, any future use thereafter shall be in conformity with the provisions of this ordinance."

The defendant soon found that the older buildings were inadequate for his repair work, and in 1958, he purchased sheet steel siding, and stored it upon the horse grazing lots. That same year he had a concrete foundation installed thereon at a cost of $500. In November of 1958, one of the plaintiffs herein notified the County Commissioners that he believed the defendant was about to engage in an infraction of the zoning ordinance applicable to the Rattlesnake Valley. A hearing was held on the matter on December 5, 1958. Thereafter the defendant petitioned the Commission for a variance to construct the building in question. A hearing was held wherein petitioners and others expressed their opposition to the con-

struction of a commercial type building in a residential zone. The Commission nevertheless granted the defendant's petition for a variance on Friday, January 30, 1959.

On Saturday, January 31, 1959, the defendant was advised and had full knowledge that an appeal was to be taken from the decision. On Sunday, February 1, 1959, the defendant and many of his friends commenced construction of the building, and did not cease until late at night when the building exterior was virtually completed.

Subsequent thereto, the defendant was served with a notice of appeal, and pursuant to a hearing, the district court reversed the order granting the variance. No appeal was ever taken from the decision of the district court.

The defendant was a named party defendant in that first action, and many of the plaintiffs herein were parties as well.

After the decision in that first action, Judge Shallenberger presiding, the defendant used the building only for storing hay, a farm truck, and farm machinery. No auto repair work was allowable.

That first summer of 1959, plaintiffs commenced this action, Cause No. 10379. After hearing the evidence, the trial court ruled that the question was moot based upon the decision in the district court by Judge Frank I. Haswell, in City of Missoula v. Missoula County, declaring the act to be unconstitutional.

Thereafter an appeal was taken to this court, and in Doull v. Wohlschlager, 139 Mont. 274, 362 P.2d 542, citing our decision upholding the act in City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539, we ruled that the question was *not* moot, and remanded the case to the district court for further proceedings.

Thereafter the district court, with the Honorable Judge E. Gardner Brownlee presiding in the instant case, held that under its interpretation of the act, section 16-4102, R.C.M.1947, the County Planning and Zoning Commission must first make

a development plan and survey of the entire county; that under its interpretation of the exemption of agricultural uses under section 16-4102, the district must comprise forty acres, none of which are being used for agricultural purposes at the time the survey is made; that lands so used at the time of the survey are thereafter exempt from zoning regulation; and that the lands of the defendant were used for grazing purposes and therefore were exempt from the regulation of the Planning and Zoning Commission.

The petitioners' motion for a new trial was overruled by the district court. The petitioners herein appeal from the decision of the district court and from the order overruling their motion for a new trial.

This decision is concerned with an interpretation of Title 16, Chapter 41, R.C.M., 1947, the County Planning and Zoning Law. Section 16-4102 therein provides:

"For the purpose of furthering the health, safety and general welfare of the people of the county, the county planning and zoning commission hereby is empowered, *and it shall be its duty to make and adopt a development pattern for the physical and economic development of the planning and zoning district.* Such development pattern, with the accompanying maps, plats, charts and descriptive matter, shall show the planning and zoning commission's recommendations for the development of the districts, within some of which it shall be lawful and with others of which it shall be unlawful to erect, construct, alter or maintain certain buildings, or to carry on certain trades, industries or callings, or within which the height and bulk of future buildings and the area of the yards, courts and other open spaces and the future uses of the land or buildings shall be limited and future building set backlines shall be established. *No planning district or recommendations adopted under this act shall regulate lands used for grazing, horticulture, agriculture or for the growing of timber; providing that existing non-conforming uses may be continued, although*

*not in conformity with such zoning regulations.*" Emphasis supplied.

This court is unable to determine whether the district court based its result in part upon the idea that the law requires a county-wide survey prior to the establishment of a particular zoning district, none having been made. We discuss the matter, however, because of the effect, that the district court's interpretation might have upon county zoning in general, and to remove any doubts as to the establishment of the Missoula County Planning and Zoning District No. 1.

■ At one place in the statute, the Legislature does use the word "districts" however, in setting out the duty of the commission, the statute states: "\* \* \* it shall be its duty to make and adopt a development pattern for the physical and economic development of the planning and zoning *district.*" (Emphasis supplied.) Since it uses the word in the plural in the very next sentence, it must be assumed that the Legislature knew the difference and intended the use of the singular when so used.

Further in section 16-4101, R.C.M. 1947, the Legislature stated:

"Whenever the public interest or convenience may require, and upon petition of sixty per centum (60%) of the freeholders affected thereby, the board of county commissioners is hereby authorized and empowered to order and create a planning and zoning district \* \* \*."

■ If the power and authorization comes only after petition by sixty percent of the freeholders *affected thereby,* then it is obvious that the commissioners do not have the power to create a district and to make a survey in portions of the county where they do not have such a petition. If the construction of the district court was correct, then there could be no district created within the county until there was a petition from 60 percent of the freeholders of the entire county. It is not up to this court to change *"freeholders affected*

*thereby"* to *"county"*. The duty of this court is to construe the law as it finds it. State ex rel. Burns v. Lacklen, 129 Mont. 243, 284 P.2d 998; Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 P.294; Fergus Motor Co. v. Sorenson, 73 Mont. 122, 235 P. 422; State ex rel. Thelen v. District Court, 51 Mont. 337, 152 P. 475.

Moreover, section 16-4107 provides: "For the purposes of this act the word 'district' shall mean any area that consists of not less than forty (40) acres." This court can take judicial notice of the fact that the smallest Montana county is composed of several hundred square miles. Clearly the Legislature contemplated districts which would be less than an entire county, and further contemplated that it would not be necesary to make a county wide survey unless so authorized by the requisite petition. We hold the interpretation of the district court to be erroneous.

Section 16-4102, supra, does provide that it is the duty of the commission "to make and adopt a development pattern for the physical and economic development of the planning and zoning district." The commission has done so when it provides for residential expansion and the protection of economic values by restricting the development to residential units. The need for maps and plots would only seem to exist when the commission has divided the district into separate areas within which it is permissible, and other areas within which it is not permissible to erect and maintain certain types of "industries, trades or callings." Such a provision is intended to provide notice where the regulations may vary from block to block and lot to lot. In this instance the regulation is all-encompassing.

With respect to the district court's holding in the instant case that the district must comprise an area of forty acres none of which are used for grazing, etc., this court cannot agree. Section 16-4107, supra, defining a district, makes no such distinction. It is well-established that when the terms

of a statute are plain, unambiguous, direct, and certain, the statute speaks for itself, and there is nothing for the court to construe. Montana Chapter, National Electric Contractors Ass'n v. State Bd. of Ed., 137 Mont. 382, 352 P.2d 258. The statute is plain on its face and need not be so limited by the district court.

Appellants also assign as error the interpretation placed upon the last sentence of section 16-4102, supra, by the district court. The court interpreted the language to mean that lands used for grazing, horticulture, agriculture or the growing of timber at the time of survey are thereafter exempt from any regulation.

If this interpretation is correct, then the act is meaningless. Most of Montana is agrarian in nature, and the lands outside of but contiguous to the towns and cities of Montana, are still largely used for such purpose. The future expansion of Montana towns and cities would be left to whim if such lands were thereafter exempt from regulation. Yet one of the most important purposes of the act is to provide for the orderly and planned expansion of such towns and cities. The interpretation of the district court would make much of the act a nullity. A statute will not be interpreted to defeat its evident object or purpose. State ex rel. Boone v. Tullock, 72 Mont. 482, 234 P. 277; Wilkinson v. La Combe, 59 Mont. 518, 197 P. 836. The objects sought to be achieved by legislation are of prime consideration in interpretation of such legislation. Corwin v. Bieswanger, 126 Mont. 337, 251 P.2d 252.

Moreover, the word "used" in the last sentence of section 16-4102, supra, is a verb used in a noun phrase as a participial adjective rather than in the past tense of the verb form. When a verb is so used it indicates a present rather than a past meaning. "Used" is defined in its adjective form, in Webster's New International Dictionary (2d ed.), to mean "Employed in accomplishing something, especially custom-

arily or repeatedly so employed * * *." This connotes a continuing or repeated use. In other words, the lands must be so used repeatedly or continuously in order to retain the exemption. In construing a statute, courts must first resort to the ordinary rules of grammar, and in the absence of a clear contradictory intention disclosed by the text, must give effect to the legislative intent according to those rules, and according to the natural and most obvious import of the language, without resorting to subtle and forced construction to limit or extend their operation. State ex rel. Palagi v. Regan, 113 Mont. 343, 126 P.2d 818.

Clearly the Legislature intended to preserve the identity of farm lands from the encroachment of expanding towns and cities, but only so long as they are so employed. Any other interpretation would result in defeating the object of the legislation.

Petitioners urge that this court should adopt a rule that a non-conforming use may not be extended to the entire tract. We do not find it necessary to rule upon this point inasmuch as the late Judge Shallenberger so ruled in the first action involving these parties. Upon expiration of the time for appeal, that decision became *res judicata* for the parties herein. A judgment which is not appealed from is conclusive as to all issues raised by pleadings actually litigated as shown on the face of the judgment and necessarily determined in order to reach the conclusion announced. Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 P.2d 1041.

While neither approving nor disapproving the decision of Judge Shallenberger, we hold that as to the parties herein, his decision is binding.

Petitioners also urge that the grazing of the two horses, and the storing of hay incident thereto, does not constitute sufficient use to qualify the lands of the defendant for the grazing lands exemption. The trial court held that it was.

We need not consider whether under different facts such

usage would amount to an exemption. For this defendant there can be no exemption. Such determination was inherent in the decision of Judge Shallenberger, and that decision is now *res judicata.*

In support of Judge Shallenberger's decision, if support be needed, we have the testimony of the defendant:

"Q. Fact is, isn't it, that this building was built to be a commercial garage and repair shop? A. That's what I asked for when it was put up." And again the testimony of his lawyer commenting upon the first answer filed.

Counsel: "You won't find anything in that about agriculture. We were going all the way on that at that time, we were going to get a garage or nothing."

Petitioners' complaint stems from the existence of the building itself. The regulations as formulated by the Missoula Planning and Zoning Commission are as follows:

"Section 1. No building, structure or premises shall be used, and no building or structure shall be erected, structurally altered, *or maintained* except as otherwise provided in this ordinance except for one or more of the following uses, and except as herein specifically provided it shall be unlawful to use any of the lands within the boundaries of Missoula Planning and Zoning District Number 1, or any structure or building located thereon, for any commercial business or industrial use. The uses which are specifically permitted are as follows:

"1. One-family dwellings.

"2. Two-family dwellings.

"3. Churches and temples.

"4. Libraries.

"5. Schools and colleges.

"6. Parks and playgrounds.

"7. Any public fire station, telephone exchange where no public business office and no repair or storage facilities are maintained, or any necessary public utilities building.

"8. Nurseries.

"9. Accessory buildings incidental to the above use located on land owned by the owner of the building of which the principal use is made and contiguous thereto, providing that such accessory buildings do not involve the conduct of any business, industry or commercial enterprise.

"10. Any agricultural, horticultural or stock raising enterprise may be carried on within the district and in connection wherewith buildings such as barns, silos, granaries, machine shops, sheds, milking parlors and the like may be maintained, altered or erected; provided, however, that such buildings be reasonably designed for use in connection with the purposes specified in this sub-paragraph 10, and be not used for any other purpose.

"11. Any building presently located within the boundaries of Missoula Planning and Zoning District Number 1, may be maintained, and any lawful use presently being made of the lands in the said district may be continued whether the same be in conformity with the provisions of this regulation or not; provided, however, that if any non-conforming use is discontinued for a period of two years, any future use thereafter shall be in conformity with the provisions of this ordinance. Buildings devoted to presently non-conforming uses may be maintained, altered or enlarged; provided further, that buildings and lands presently used for non-conforming uses may not be devoted to any non-conforming uses other than the use being made of such buildings or lands as of the date of the enactment hereof.

"12. The growing and harvesting of timber is expressly permitted, but it shall be unlawful to conduct or operate any sawmill, planing mill or other establishment for the processing of timber, or the manufacture of wood products within Missoula County Planning and Zoning District Number 1." Emphasis supplied.

It is manifestly clear that the building which this defendant

seeks to maintain must fit within one of the above classifications. But it does not.

It is clearly not within sub-paragraphs 1 through 8 or sub-paragraph 12.

The decision of Judge Shallenberger precludes him from being within sub-paragraph 11 dealing with non-conforming uses.

All that remains is sub-paragraph 9 dealing with accessory buildings. Defendant could hardly be heard to say that a 44 x 80 foot steel building is accessory to his dwelling.

The conclusion is inevitable that the defendant cannot maintain his building under the regulation without a variance and he has none.

Respondent urges hardship as a defense, citing the case of Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534. A review of that case indicates that the issue before the court was whether the Board of Adjustment had abused its discretion in permitting a variance on the grounds of hardship. That rule cannot be invoked here, for the decision of Judge Shallenberger, that the Missoula County Commissioners had abused their discretion is *res judicata* for this defendant.

Moreover the defendant knowing full well that an appeal was to be taken from the decision of the commissioners, deliberately went ahead with the construction in order to forestall an adverse decision on appeal by presenting the district court with a *fait accompli*. This court is no more impressed with defendant's claim of hardship than was Judge Shallenberger. No one can take advantage of his own wrongs, section 49-109, R.C.M.1947.

To rule otherwise would be to permit mass avoidance of zoning laws.

Respondent's claim of laches is likewise lacking in merit. The record shows that one of the plaintiffs herein notified the county commissioners as soon as it became ap-

parent that the defendant was possibly planning a violation of the zoning ordinance.

Mr. Justice Doyle premises his dissenting opinion upon the proposition that the defendant Wohlschlager had a variance, good for two days, and that all of his acts were legal inasmuch as he constructed the building before the courthouse opened to the plaintiff on Monday morning, February 2, 1959. To adopt such premise requires one to ignore the provisions of section 16-4105, R.C.M.1947, which gives an aggrieved party the right to appeal any decision of the county commissioners within thirty days after such decision was made to the district court. The plaintiff here made an appeal within the statutory period, Judge Shallenberger set aside the variance as illegal and the defendant failed to appeal the Shallenberger decision.

The case is reversed and remanded with instructions to the district court to issue the mandatory injunction as requested by the plaintiffs in their complaint.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES, concur.

MR. JUSTICE ADAIR dissents.

MR. JUSTICE DOYLE:

I dissent.

The majority opinion ignores the fact that the defendant Wohlschlager was *not* under the provisions of the zoning regulations at the time he built the building on his forty odd acres of real property in Missoula County, in that he had variance from the rule of the zoning district.

Additionally the defendant had over forty acres upon which there were horses grazing and the number of horses is not material as what is to determine the mathematical requirements of animals to classify the land as grazing. This is simply agricultural land mentioned in R.C.M.1947, § 16-4102.

A recent case by the Supreme Court of the United States Schroeder v. City of New York, 83 S.Ct. 279, involves the question of notice. There the court spoke of the due process of law under the Fourteenth Amendment to the Constitution of the United States and said: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [citing cases.] "

The defendant was granted a variance on Friday, January 30, 1959, and on Sunday, February 1, 1959, constructed the building in question. The majority opinion recites that the defendant had full knowledge that an appeal was to be taken from the variance granted the defendant, which petition was subsequently filed and the decision of the district court was adverse to the defendant's position. But the basic fact is this, that prior to the time of the filing of the petition for injunctive relief against the defendant, the defendant had constructed the building on over forty acres of land that he owned in fee simple and he is now being told that this is illegal by this court.

In City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539, this court held that the City of Missoula had power to establish zoning districts and that there were sufficient guide lines and that if the statutory method of zoning were followed the function of the county board was not of legislative character to violate section 1 of Article IV, of the Constitution of this state. Under section 16-4102, R.C.M.1947, the county zoning commission is denied power to regulate the use of land for *grazing, horticulture, agriculture* or the *growing of timber.*

In City of Missoula v. Missoula County, supra, this court quoting from Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056, said:

" ' " * * * on the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency and *its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations.*" Emphasis supplied'."

Where, as here, the defendant Wohlschlager obtained a variance from the duly authorized legally constituted zoning board and constructed the building which he, under the circumstances and on that date, had a perfect right to build, then he had a right to believe that no one, either administrative, legislative or judicial would enact an *ex post facto* law or rule of law depriving him of the right of that building on his own premises. This is what the majority has accomplished. This majority opinion is predicated upon the doctrine of what the defendant might or should have known with a reference to an injunction to be subsequently filed against him.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865, was a case which involved notice by publication to the beneficiaries of a common trust fund, and the court thoroughly canvassed the problem with a sufficiency of notice under the due process, pointing out the reasons behind the basic constitutional rule, as well as the practical considerations which make it impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation.

The court further observed that the requirement that parties be notified of proceedings affecting their legal rights, which is obviously a vital corollary to one of the most fundamental requisites of due process—the right to be heard.

The court further observed: "The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry

upon real estate in the name of the law may reasonably be expected to come promptly to the owner's attention.''

Here the defendant in conformity with the district zoning law in district 1 of Missoula county, obtained his variance and built his building and he had every reason and right to rely upon the variance granted to him. One of his sources of revenue for many years prior to the enactment of the zoning district law was a part-time automobile repair shop which was a wooden building. Yet because he erects a steel building, this court in its majority opinion holds that this violates the district zoning law. His reason was obvious as he believed and had reason to believe that he could not and would not come within the provisions of the zoning district. The record discloses that on April 12, 1955, the defendant received a used car dealers license from the State Board of Equalization. On May 5, 1955, he commenced the operation of a repair shop on a full-time basis in wooden buildings north of his residence, all on this over forty-odd acres of land owned by him in fee simple.

I would affirm the judgment of the district court in this cause.