IN THE SUPREME COURT OF THE STATE OF MONTANA

----------

IN RE THE APPLICATION OF J. VAUGHAN BARRON
FOR A WRIT OF MANDATE

and                                                              No. 13328

W. WILLIAM LEAPHART, Court-appointed counsel
for Merrel Cline and Shirley Cline,

                         Plaintiff, Respondent
                         and Cross-Appellant.

        -vs-

COUNTY COMMISSIONERS of Lewis and Clark
County, State of Montana,

                         Defendants and Respondents,

        -vs-                                                     No. 13345

ROBERT WOODAHL, Attorney General of the
State of Montana and Head of the Department
of Justice,

                         Defendant and Appellant.

----------

ORIGINAL PROCEEDING:

Counsel of Record:

        For Appellants:

                J. Vaughan Barron argued, Great Falls, Montana
                Stuart L. Kellner argued, Helena, Montana

        For Respondents:

                Hon. Robert L. Woodahl, Attorney General, Helena,
                 Montana
                Jock O. Anderson, Assistant Attorney General, argued,
                 Helena, Montana
                Thomas Honzel argued, Helena, Montana

----------

                                Submitted:  May 28, 1976

                                Decided:  JUL - 9 1976

Filed:  JUL  9 1976

THOMAS J. KEARNEY
_____
                         Clerk Supreme Court

Hon. W. W. Lessley, District Judge, sitting for Chief Justice James T. Harrison, delivered the Opinion of the Court.

This is a consolidation of an appeal from the district court, Lewis and Clark County, and an original writ of mandate from the district court, Cascade County; both causes basically deal with the payment for services of appointed counsel of criminal defense of Workmen's Compensation cases.

Peripheral matters in this appeal are the claim of Timothy S. Thane, court reporter, for preparation of transcripts of the district court trial; Leaphart, a court appointed attorney's claim for his fees on this appeal in one of these causes; and the question of the reasonableness of Barron's attorney fees.

It is admitted the services of the court appointed counsel were performed. It is further admitted the fees for the services performed in the Lewis and Clark County case are reasonable. The reasonableness of counsel fees in the Cascade County case is not admitted.

The central issue to be answered on this appeal is who pays for the attorneys' services and costs. Both district courts have held that in these Workmen's Compensation cases the department of justice must pay.

The attorney general as head of the department of justice appeals.

These criminal cases before us are the result of a state-wide program investigated and prosecuted by the attorney general as head of the department of justice.

The authority to so act comes to the attorney general by section 79-2315, R.C.M., 1947. The statute was enacted in 1974 and provides:

"The attorney general shall conduct on behalf of the state, all prosecutions for public offenses disclosed by an audit of a state agency performed by the legislative auditor."

This Court prior to enactment of this special statute held that the attorney general had no such authority. State ex rel. Woodahl v. District Court, 159 Mont. 112, 495 P.2d 182.

Montana's legislature fully intended this state-wide program of investigation and prosecution be carred on to a final conclusion, in what the media has called the Workmen's Compensation scandals; it appropriated money for that specific task. A reading of H.B. 520, Laws of 1975, makes clear the money is appropriated for a definite purpose; the bill describes that purpose in these words:

"FOR INVESTIGATION AND PROSECUTION OF WORKMEN'S COMPENSATION DIVISION RELATED MATTERS * * *."

Armed with the specific authority of the statute, section 79-2315, R.C.M. 1947, and furnished with money by the legislature for that purpose, the department of justice, acting through its head, the attorney general, proceeded with the task. These cases are now before us because the department of justice is acting under the mandates of those statutes.

We now reach the crucial question: Who pays for these court appointed services?

The answer must come from section 95-1005, R.C.M. 1947, enacted in 1967, amended in 1973, and in its present form as of 1974, and provides:

"Whenever, in a criminal action or proceeding, an attorney at law represents or defends any person by order of the court, on the ground that the person is financially unable to employ counsel, such attorney shall be paid for his services such sum as a district court or justice of the state supreme court certifies to be a reasonable com-

pensation therefor and shall be reimbursed for reasonable costs incurred in the criminal proceeding. Such costs shall be chargeable to the county in which the proceeding arose, except that (a) in proceedings solely involving the violation of a city ordinance or state statute prosecuted in a municipal, city or police court wherein costs shall be chargeable to the city or town in which the proceeding arose, and (b) in arrests in criminal proceedings by agents of the department of fish and game and <u>arrests by agents of the department of justice,</u> the costs (including attorneys' fees of attorneys appointed by the court for the defendant) must be borne by the <u>state agency causing the arrest.</u>" (Emphasis added).

A reading of this statute makes evident (1) costs are chargeable to the county with two exceptions and (2) costs include attorneys' fees for attorneys appointed by the court in criminal causes for the defendant.

Here, we are faced with the more specific question of who must pay under the exception of this statute. We are dealing with the exception of subdivision (b). This is a single sentence starting with the words "in arrests" and concluding with the words "causing the arrest." The attorney general underlines and emphasizes the phrase, "arrests in criminal proceedings by agents * * * of the department of justice." He takes one narrow step further in his construction of the statute and in its application to the facts here, and states that in these cases no agent of the department of justice <u>physically</u> made an arrest; this is true; he further states that in those cases where arrests were necessary the arrests were <u>physically</u> made by local law enforcement agencies or agents, such as the sheriff of Toole County.

Merely to state this construction and the meaning inferred by the attorney general is to show and emphasize its narrowness. He insists the statutory exceptions deal with and are intended to deal only with arrests actually made by game wardens and highway

patrolmen in their respective departments, fish and game
and justice.

When we consider what was actually done here in the Cline
cases now before us, we illustrate the absurdity of such a narrow
approach. There the department of justice, through Dzivi, re-
quested the warrants of arrest; the warrants, after issue by the
court, were returned to the department of justice; a telephone
call was made by an agent of the department to Sheriff Brooks
of Toole County; later a teletype copy of the warrant was sent
to the sheriff by an agent of the department of justice and
the sheriff was asked to apprehend and physically take into
custody the Clines and then notify the department of that occur-
rence; the Clines were physically taken into custody by the
sheriff, the department notified, and then the Clines were phy-
sically transported to Helena by investigators of the department
of justice.

In the other cases before us no actual physical act of
arrest was made; it is clear however that the defendants appeared
at arraignments as the result of Informations filed by officers
and agents of the department of justice. The record is barren
of any acts by any agents of any counties except Sheriff Brooks'
directed activities by the department of justice.

Is the mere ministerial physical act of arrest to determine
the operative effect of the subsection (b) exception? We think not.

Are we to say the single physical act of arrest by a
sheriff in Toole County or the lack of a physical act of arrest is
the pivotal question? Surely we must not gather the intent and
purpose of the legislature on such narrow ground.

The legislature's purpose of section 95-1005, R.C.M. 1947, was to assure payment of the services of appointed defense counsel in criminal proceedings.

In State ex rel. Langan v. District Court, 111 Mont. 178, 180, 107 P.2d 880, it was said:

> "In construing a statute courts must look to the language employed and the object sought to be accomplished."

The further purpose of the legislature was to establish a specific and practical payment for such court appointed counsels' services.

By the two amendments to section 95-1005, the legislature made it clear that all costs of prosecution does include attorney fees for court appointed counsel; it was and is a workable, practical plan in that it provides: (1) Where the case is prosecuted in city court, the city or town is responsible. (2) Where the department of fish and game or the department of justice causes the arrest, then costs of the resulting criminal proceedings must be borne by the agency. (3) In other cases the costs are properly chargeable to the county wherein the proceeding arose.

The legislature set in exceptions to the general rule that counties shall pay. The exception we are concerned with is subsection (b) on department of justice. It must be given meaning and purpose.

In Burritt and Safeway v. City of Butte, 161 Mont. 530, 534,535, 508 P.2d 563, the Court stated:

> "The Court's function is to construe the language of the statute in accordance with its usual and ordinary acceptance, with a view to be giving vitality to and making operative all provisions of the law and accomplishing the intention of the legislature when ascertainable * * *.

> " * * *

> "The goal of statutory interpretations is to give effect to the purpose of the statute. * * * To give effect to the purpose of the statute as intended

by the legislature, the context in which the words are used is more important than precise grammatical rules or a dictionary definition."

The phrase in subsection (b) "must be borne by the state agency causing the arrest" goes beyond the mere act of arrest.

In Doull v. Wohlschlager, 141 Mont. 354, 364, 377 P.2d 758, it was said:

"* * * A statute will not be interpreted to defeat its evident object or purpose * * *. The objects sought to be achieved by legislation are of prime consideration in interpretation of such legislation. Corwin v. Beiswanger, 126 Mont. 337, 251 P.2d 252."

Let us look at the peripheral problems here presented. J. Vaughan Barron serving as attorney for the defendant in Cause No. 6537B, was allowed $9,068.74 for services rendered, plus costs. The reasonableness of that fee has been challenged.

The statute providing such fees is section 95-1005, R.C.M. 1947:

"Whenever, in a criminal action or proceeding, an attorney at law represents or defends any person by order of the court, on the ground that the person is financially unable to employ counsel, <u>such attorney shall be paid for his services such sum as a district court or justice of the state supreme court certifies to be a reasonable compensation therefor and shall be reimbursed for reasonable costs incurred in the criminal proceeding.</u>" (Emphasis added.)

The record before us is barren of any evidentiary hearing, of affidavits, of time estimates, or of guide lines used to arrive at the reasonableness of the fee allowed to Barron by Judge Truman G. Bradford. Such procedures must be before us, that we may determine the reasonableness of the fees allowed. State v. Mempa, 78 Wash 2d 530, 477 P.2d 178, 182 (1970); State v. Horton, 34 N.J. 518, 170 A.2d 1 (1961), Gant v. State, (Fla), 216 S.2d 44 (1968).

- 7 -

W. William Leaphart seeks fees for his services on this appeal. State ex rel. Stephens v. District Court, _____Mont._____, _____P.2d _____, 33 St.Rep. 469, is controlling, this is allowable. He is granted $1,000 for his attorney fee on this appeal.

We deny the writ of mandamus and return the cause to the district court for an evidentiary hearing in conformity with the guide lines suggested as to the amount and reasonableness of J. Vaughan Barron's fees and costs.

It is conceded W. William Leaphart's fees and costs are reasonable and they will be granted. We refer to our previous order of June 11, 1976, on Court Reporter Thane's claim for transcript.

We affirm the district courts and hold the department of justice must pay the appointed attorneys' compensation and costs.

Hon. W. W. Lessley, District
Judge, sitting for Chief
Justice James T. Harrison.

We Concur:

_____
_____
_____

_____
Justices.

Mr. Justice John Conway Harrison specially concurring:

While I concur with the majority in the above matter, I desire for the information of Montana's legislature, to put focus upon the rising costs of defense in the various counties of the state. The majority opinion provides that the costs arising out of cases in the Workmen's Compensation investigation shall be paid by the state. However, during recent years several counties of the state have had to shoulder heavy trial costs due to the necessity of providing counsel for indigent defendants. The time has come, in my opinion, for the legislature to study the rising costs of defense and adopt one of several methods now in use to provide costs of attorney fees for indigent defendants.

For example, in two rural counties of this state, Pondera and Big Horn, because of prolonged murder trials, the taxpayers have had to assume extraordinary expense. In the instance of Pondera County defense attorney fees at the district court level amounted to $28,000 plus $7,815.25 in costs. In Big Horn County, in a multiple defendant murder case, attorney fees amounted to $35,391.57 and costs of $2,529.95. Both cases are now on appeal and the cost of appellate counsel remains to be determined. These two examples, I feel, highlight the growing problem.

A number of judicial districts of the state provide for a full time defense counsel staff for the indigent and budget the costs as a part of the judicial budget. Whether the salaries paid are adequate or not may be debatable, but in several cases we have had called to our attention, that a defense counsel drawing a monthly salary, as the county attorney does, has been paid an additional fee for some unusual case that has arisen. Such an arrangement is the best of two worlds, but is an unnecessary burden on the taxpayer.

A study by the National Legal Aid and Defender Association released January 7, 1976, provides a draft report and guide line for the defense of eligible persons. This report covers both the federal system and those of the various states. The federal government since the passage of the Criminal Justice Act of 1964, handles the payment of the defense on a set fee cost and administers it "under the supervision of the Director of the Administrative Office of the United States Courts".

It is interesting to note from a Summary of the Report of the Committee to Implement the Criminal Justice Act that throughout the federal system payments are made on the basis of $50 per hour court time and $20 per hour office time. A report on the cumulative payments to private attorneys for the fiscal year 1975 as of December 31, 1975, indicates that under the federal system the following figures cover the defense of the indigent in Montana:

```
Number of persons represented ........................157
Number of cases in which counsel was paid...........135
In court compensation................................$6,803.50
Out of court compensation .........................$30,239.86
Out of pocket expenses............................ $2,430.19
            Total paid to counsel .............. $39,473.55
Average payment to counsel .....................    $292.39.
```

During this period the federal government paid for the defense of two murder cases in the Montana district. One fee was set at $1,570.00 and the other $1,914.00.

The time has come, in my opinion, for the legislature to either adopt a set fee system as is done under the Federal Criminal Justice Act or to provide full time defense counsel in each judicial district of Montana.

John Conway Harrison
Justice.