MR. CHIEF JUSTICE HASWELL
dissenting:
I respectfully dissent. I would hold the refusal of the defendant to submit to a sobriety test admissible in evidence and remand the case to the District Court of Gallatin County for trial. In so doing I find no denial of the constitutional privilege against self-incrimination under either the state or federal constitutions.
Montana’s implied consent law provides in relevant part:

“Chemical blood, breath, or urine tests.

“(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent... to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested by a peace officer for driving ... a motor vehicle while under the influence of intoxicating liquor . . .

"

“(3) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test . . . none shall be given, but the division, upon the receipt of a sworn report of the peace officer that he had reasonable grounds to believe the arrested person had been driving . . . upon the public highways of this state while under the influence of intoxicating liquor and that the person had refused to submit to the test upon the request of the peace officer, shall suspend the license or driving privilege of such person... for a period of 60 days . . .” Section 61-8-402, MCA.

“Evidence admissible.

“(2) If the person under arrest refused to submit to the test *194 as hereinabove provided, proof of refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving ... a motor vehicle upon the public highways while under the influence of intoxicating liquor ...” Section 61-8-404, MCA.
This law was enacted by the Montana legislature in 1971. The journal of the Senate Judiciary Committee indicates that at that time, Montana was one of only four states without this law.
The District Court held unconstitutional the provision that proof of refusal to submit to a sobriety test was admissible in evidence “due to the split of authority of the various and respective states on the question of the constitutionality of this portion of the statute.” In so holding, the District Court denied the statute the presumption of constitutionality to which the statute was entitled. McClanathan v. Smith (1980), Mont., 606 P.2d 507, 37 St.Rep. 113.
Initially we must determine if evidence of refusal to submit to a chemical test for sobriety is relevant, i.e. whether it has sufficient probative value on the issue of intoxication to be admitted to evidence. In my view the better reasoned decisions hold that refusal to take a chemical test for intoxication may indicate the defendant’s fear of the results of the test and his consciousness of guilt, and if the defendant has some other explanation for the refusal, such explanation can be considered by the jury in determining whether the refusal is to be construed as consciousness of guilt. For example, see Hill v. State (1979), Ala., 366 So.2d 318; Campbell v. Superior Court (1971), 106 Ariz. 542, 479 P.2d 685; People v. Conterno (1959), 170 C.A.2d 817, 339 P.2d 968; State v. Durrant (1963), 55 Del. 510, 188 A.2d 526; State v. Bock (1958), 80 Idaho 296, 328 P.2d 1065; State v. Benson (1941), 230 Iowa 1168, 300 N.W. 275; Gardner v. Commonwealth (1954), 195 Va. 945, 81 S.E.2d 614. It would appear to me that such evidence could support an inference of consciousness of guilt and that the jury is the proper body to determine what weight should be given such evidence.
There is yet another reason why this evidence is relevant. The State is entitled to show the jury why it produced no scientific evidence of intoxication to counteract the inference *195 that the evidence of intoxication introduced by the State was weak. A common jury instruction given in Montana reads as follows:
“You are instructed that evidence is to be considered not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and of the other to contradict; and therefore, that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory [evidence] was within the power of the party, the evidence offered should be viewed with distrust.” MJIG No. 1.06.
In this sense evidence of refusal is relevant, material and probative on the weight of the evidence introduced by the State, entirely apart from its relevance concerning consciousness of guilt.
Most of the decisions denying materiality and probative value to a refusal to take a sobriety test are based on the reasoning that a refusal may be dependent upon reasons other than consciousness of guilt and therefore is not probative as to intoxication. One case has even held that evidence of refusal is inadmissible because such evidence simply is not probative. Duckworth v. State (Okla.Crim. 1957) 309 P.2d 1103. In my view evidence of refusal is probative and material for the reasons above stated and should be presented to the jury for their consideration rather than excluded from evidence by the judge as a matter of law. Evidence as to whether a person’s refusal to take the sobriety test is due to his asthma, fear of the test itself, distrust of the procedure, distrust of the competency of the testers, fear that he would have to pay for the test, doubts as to the test’s reliability, or a desire that his personal physician be present at the time the test is conducted is better weighed by the jury rather than being excluded by the judge as not relevant or probative.
The Fifth Amendment of the United States Constitution provides that “No person . . . shall be compelled in any criminal case to be a witness against himself.. .” U.S. Const. Amend. V. This provision is applicable in state court criminal proceedings through the due process clause of the Fourteenth Amendment of the United States Constitution. This constitu *196 tional privilege protects a defendant only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature. Schmerber v. California (1966), 384 U.S. 757. The United States Supreme Court in Schmerber went on to say:
“[B]oth federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to -write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.” Schmerber, 384 U.S. at 764.
The Montana Constitution provides: “No person shall be compelled to testify against himself in a criminal proceeding.” 1972 Mont.Const., Art. II, § 25. This Court has previously held that the Montana constitutional privilege against self-incrimination is no greater than that contained in the federal constitution.
“[T]he Montana constitutional guarantee of the privilege against self-incrimination affords no broader protection to an accused than does the Fifth Amendment. State v. Armstrong, 170 Mont. 256, 552 P.2d 616. The opinions of the United States Supreme Court, therefore, delineate the maximum breadth of the privilege against self-incrimination in Montana.” State v. Finley (1977), 173 Mont. 162, 164-165, 566 P.2d 1119, 1121.
The majority holding that a communication of refusal, whether written, verbal, or otherwise involving the defendant’s consciousness of the facts and the operation of his mind in expressing it is testimonial in nature and violates his privilege against self-incrimination, extends far beyond any pronouncement of the United States Supreme Court to date. It extends the breadth of Montana’s constitutional provision beyond that afforded by the United States Constitution and overrules sub silento this Court’s own interpretation of Montana’s constitutional privilege against self-incrimination.
At least two federal courts of appeal have held that allowing the admission into evidence of proof that defendant refused to take a breath test does not violate his privilege against self-incrimination. Welch v. District Court of Vermont Unit, Etc. (2d Cir. 1979), 594 F.2d 903; Newhouse v. Misterly (9th Cir. *197 1969), 415 F.2d 514. The courts of at least 16 other states have likewise so held: Hill v. State (1979), Ala., 366 So.2d 318; Campbell v. Superior Court (1971), 106 Ariz. 542, 479 P.2d 685; People v. Sudduth (1966), 55 Cal. Rptr. 393, 421 P.2d 401; State v. Durrant (1963), 55 Del. 510, 188 A.2d 526; State v. Holt (1968), 261 Iowa 1089, 156 N.W.2d 884; State v. Smith (1978), La., 359 So.2d 157; People v. Taylor (1977), 73 Mich.App. 139, 250 N.W.2d 570; State v. Meintz (1972), 189 Neb. 264, 202 N.W.2d 202; People v. Thomas (1978), 46 N.Y.2d 100, 385 N.E.2d 584; State v. Flannery (1976), 31 N.C.App. 617, 230 S.E.2d 603; City of Westerville v. Cunningham (1968), 15 Ohio St.2d 121, 239 N.E.2d 40; Commonwealth v. Robinson (1974), 229 Pa.Super. 131, 324 A.2d 441; State v. Smith (1956), 230 S.C. 164, 94 S.E.2d 886; Gardner v. Commonwealth (1954), 195 Va. 945, 81 S.E.2d 614; State v. Brean (1978), 136 Vt. 147, 385 A.2d 1085; State v. Albright (1980), 98 Wis.2d 663, 298 N.W.2d 196. At least five other states with statutes the same or similar to Montana’s have been held constitutional, Robinson, Hill, Smith, Holt, and Thomas, supra.
Wigmore indicates that the privilege against self-incrimination does not prohibit inspection or proof of bodily features or conditions because such are nontestimonial in nature and list the following types or categories of this non-prohibited evidence:
1. Fingerprinting, measuring and photographing a suspect;
2. Imprinting a foot or shoe mark for identification;
3. Examination of a suspect’s body for identifying characteristics;
4. Examination of a suspect’s private parts for evidence of disease or crime;
5. Extraction of a substance from a suspect’s body such as urine, a blood sample, or breath;
6. Requiring a suspect to put on a hat, glasses, shoes or clothing for purposes of identification;
7. Requiring a suspect to speak for voice identification;
8. Requiring a suspect to write for identification;
9. Requiring a suspect to appear in court, stand, assume a stance, walk, or make a particular gesture;
10. Requiring a suspect to be examined for sanity.
*198 Wigmore on Evidence, Vol. 8, section 2265, McNaughton Revision 1961.
A federal court of appeal has held that evidence of a defendant’s refusal to cooperate in giving a handwriting exemplar, including his efforts to disguise his handwriting, was admissible as against the claim that the act of refusal was itself testimonial in nature. United States v. Wolfish (2d Cir. 1975), 525 F.2d 457, cert.denied (1976) 423 U.S. 1059. The analogy drawn by the majority with reference to polygraph tests is in-apposite inasmuch as polygraph tests are not admissible in evidence and therefore the refusal to take the same would not be probative. The United States Supreme Court has held that there is no constitutional right to refuse to submit to a blood test, and the results of such test taken against an accused’s will are admissible at trial, Schmerber, supra.
The majority of states considering the question have held that admission in evidence of refusal to submit to a chemical test for intoxication does not violate the privilege against self-incrimination; this result is reached on the ground that an accused has no constitutional or statutory right to refuse a chemical test, and since the results of a test taken against his will are admissible, evidence of refusal would also be admissible. See Hill v. State, supra. Conversely, most states that recognize a statutory right to refuse a chemical test do not allow evidence of such refusal as a general rule, e.g., State v. Parker(1976), 16 Wash.App. 632, 558 P.2d 1361; State v. Adams (1978), W.Va., 247 S.E.2d 475.
A refusal by itself is not a testimonial communication within the prohibition of the privilege against self-incrimination but rather it is the act of refusal, i.e., conduct, which gives rise to inferences that a jury is entitled to consider. The following language describes the reasoning behind this conclusion:
“Nor was defendant’s refusal to ‘display his voice’ itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody... false alibi... flight... suppression of evidence. . . and failure to respond to accusatory statements when not in police custody ... its admission does not violate the privilege. Moreover, as in the foregoing examples, the *199 evidence did not result from a situation contrived to produce conduct indicative of guilt... By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind.” People v. Ellis (1966), 55 Cal.Rptr. 385, 421 P.2d 393, 397-398.
The majority proceed on what I consider a false premise — that Montana’s implied consent statute grants defendant a statutory right to refuse to take the sobriety test. The majority make no analysis of the statute or the rules of statutory construction.
In my view the plain and unambiguous language of the statute belies this construction. I find no language in the statute, express or implied, granting a person a statutory right of refusal. The language plainly says that a person operating a motor vehicle on the public highway gives his consent to a sobriety test if arrested for driving a vehicle while under the influence of intoxicating liquor; if he refuses, no test shall be given, but proof of such refusal is admissible in any criminal action arising out of his acts alleged to have been committed while driving under the influence. The majority fail to point out any language in the statute granting a statutory right of refusal. It has long been the law in Montana that the intention of the Legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined the courts may not go further and apply any other means of interpretation. State, Etc. v. District Court, Etc. (1979), Mont. , 591 P.2d 656, 36 St.Rep. 489; Dunphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660, and cases cited therein. Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the Court to construe. State, Etc. v. District Court, Etc., supra; Doull v. Wohlschlager (1963), 141 Mont. 354, 377 P.2d 759; Montana Chap., Nat. Elec. Con. Ass’n v. State Bd. of Ed. (1960), 137 Mont. 382, 352 P.2d 258. The function of the Court is simply to ascertain and declare what in terms or substance is contained in the statute and not to insert what had been omitted or omit what has been inserted. Section 12-101, MCA.
*200 Montana’s implied consent law adopts a statutory scheme whereby a person using the public highway impliedly consents to a chemical testing of his blood, breath or urine when lawfully arrested for an offense involving the operation of a motor vehicle while under the influence of intoxicating liquor. The Act contains a statutory determination of intoxication according to the per cent by weight of alcohol found in a person’s blood. The Act provides procedures for the suspension of a person’s driver’s license for 60 days in the event he refuses to submit to such test. The Act expressly provides for admission in evidence of refusal to submit to the test.
An act of this type was first enacted in New York in 1953 and arose out of dissatisfaction with alternative proposals protecting against intoxicated drivers by either making chemical tests compulsory or requiring actual consent in the form of a written waiver made at the time of application for a driver’s license. The New York Act was not intended to provide a right to refuse a chemical test even though by the terms of the act the police must acquiesce in a refusal and may not compel a person to submit to a test against his will.
This type of statute provides for mandatory consent with a freedom of refusal to prevent unseemly struggles that are likely to arise when police and citizens fail to appreciate the import of a common purpose. An act of this type does not contemplate a per se right of refusal, but rather an acquiescence in refusal in the posture of avoiding violent conflicts. The New York courts have interpreted the act in this matter:
“[T]his ‘right’ of refusal is not really a right in the sense of a fundamental personal privilege, but, rather, was merely an accommodation to avoid a distasteful struggle to forcibly take blood.” People v. Paddock (1971), 29 N.Y.2d 504, 272 N.E.2d 486.
Other courts have reached the same result in interpreting substantially similar acts. Campbell, supra; Bush v. Bright (1968), 264 Cal. App.2d 788, 71 Cal.Rptr. 123. Acts of this type do not grant a right of refusal since they exact a penalty for refusal in the form of suspension of the person’s driver’s license and in some states, including Montana, they extract the further penalty of expressly allowing evidence of refusal *201 to be admitted at trial. Accordingly, I would not interpret Montana’s implied consent law as providing a right of refusal.
The contention that a defendant may have valid reasons for refusing to take the test which have nothing to do with the consciousness of guilt loses much of its vitality because such reasons, if they exist in fact, can easily be proven by the testimony of third persons such as the police officers, doctors, technical experts on the reliability of such tests, and other competent witnesses without the necessity of the defendant taking the stand himself if he chooses not to do so.
The construction of Montana’s implied consent law to grant a driver the statutory right of refusal provides any defendant in such a case with an unconscionable advantage tantamount to acquittal. It enables a defendant to point out to the jury that the State (which must prove his guilt beyond a reasonable doubt) has only the weakest of evidence as no scientific evidence of intoxication was produced; at the same time it denies the State the right to show that its failure to produce scientific evidence was due to the defendant’s refusal to submit to a sobriety test. We have many times given lip service to the observation that the object of a criminal trial is to establish the truth, e.g., State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. The majority today have made this impossible by placing a premium on nondisclosure of relevant facts to the jury.
For the foregoing reasons, I would hold the evidence of refusal to submit to a sobriety test admissible without violation of the defendant’s privilege against self-incrimination under the federal or state constitutions.
MR. JUSTICES WEBER AND HARRISON dissenting:
We concur in the foregoing dissent of the Chief Justice.