No. 79-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

MONTANA WILDLIFE FEDERATION and
GALLATIN WILDLIFE FEDERATION,

Plaintiffs and Appellants,

and

MICHAEL AND SUSAN COPELAND,

Intervenors,

vs.

GEORGE SAGER, JOHN BUTTLEMAN, JOY NASH,
COUNTY COMMISSIONERS OF GALLATIN COUNTY,
et al.,

Defendants and Respondents.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Goetz and Madden, Bozeman, Montana
James Goetz argued, Bozeman, Montana

For Respondents:

Donald E.White, County Attorney, Bozeman, Montana
Gregory Todd argued, Deputy County Attorney, Bozeman,
Montana

For Intervenors:

Landoe, Brown, Planalp, Kommers and Lineberger,
Bozeman, Montana
James Kommers argued, Bozeman, Montana

For Amicus Curiae:

Roy H. Andes, Helena, Montana

Submitted: September 10, 1980
Decided: DEC 1 0 1980

Filed: DEC 1 0 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Montana Wildlife Federation and Gallatin Wildlife Association appeal from a judgment of the District Court, Eighteenth Judicial District, Gallatin County, upholding the actions of the Board of County Commissioners of Gallatin County in establishing two planning and zoning districts, and in permitting a zoning amendment with respect to one of those districts. Respondents Sager, Buttleman, Nash, White, and Babb constitute the planning and zoning commissions for each of the districts. The intervenors, Michael D. Copeland and Susan B. Copeland are the owners of one of the parcels of land involved.

The major question presented by this appeal is whether the Board of County Commissioners may adopt a planning and zoning district under Part 1, Chapter 2, Title 76, MCA (section 76-2-101 through -112, MCA) before a comprehensive development plan for the jurisdictional area has been adopted, and without considering the criteria and guidelines for zoning regulations set forth in section 76-2-203, MCA. We hold in this case that such an adopted planning and zoning district is valid.

Montana Wildlife Federation and Gallatin Wildlife Association are nonprofit Montana corporations concerned essentially with environmental protection, preservation of wildlife and wildlife habitat, and the protection of general aesthetic values in land planning. Other public interest organizations appeared before us as amici curiae, they being: Bozeman Environmental Information Center, Madison-Gallatin Alliance, Montana Environmental Information Center, Coalition for Canyon Preservation, Bitterroot Citizens for Sensible Growth and Grandview Homeowners Association.

-2-

In late 1978, a group of freeholders, owning parcels of land extended generally along the west foothills of the Bridger Mountain range, north of the City of Bozeman in Gallatin County, initiated meetings to propose a general planning and zoning district in that area for the approval of the Gallatin County commissioners. They hired a planner to work up a master plan, and an attorney to do the preliminary legal work. Because additional subdivision activity was imminent in the area, the citizens circulated a petition calling for an interim subdivision moratorium until the whole area could be brought into a general planning and zoning district. The citizens decided against the moratorium, but agreed that the planning effort should go forward.

In the meantime, Michael D. and Susan B. Copeland, owners of 120 acres within the area proposed for general planning, filed a petition with the Board of County Commissioners for the creation of a separate planning and zoning district for their own lands. Michael Copeland testified that his petition was filed with the express purpose of escaping the application of the proposed large zoning district. Another separate petition for such a planning and zoning district was filed by Arnold and Rhoda Craig, who owned 80 acres in the general area.

The separate petitions of Copelands and Craigs sought the establishment of separate planning and zoning districts, each coextensive with the boundaries of the parcels of the owners, under section 76-2-101, MCA. There is no question that no comprehensive plan was prepared for either the Copeland or the Craig lands prior to their petitions nor while they were being considered by the Gallatin County Commissioners; and likewise, no question that the Gallatin County subdivision staffs prepared written reports to the

-3-

commissioners which were adverse to the adoption of the planning and zoning districts.

On March 2, 1979, the County Commissioners adopted a planning and zoning district for the Copeland parcel which became Sypes Canyon Planning and Zoning District No. 1. On March 22, 1979, the County Commissioners adopted a planning and zoning district for the Craig property which became Sypes Canyon Planning and Zoning District No. 2.

Subsequently, the Planning and Zoning Commission for these districts adopted a development pattern for each district under section 76-2-104, MCA, consisting of a "Sypes Canyon Zoning Ordinance and Zoning Map", one adopted for each district.

In May 1979, the Copelands petitioned the Planning and Zoning Commission of their district to amend their initial zoning district so as to provide a greater density of lots on a portion of their lands. The amendment or zoning request was granted on May 22, 1979 by the Planning and Zoning Commission, again over the negative recommendation of the Gallatin County Subdivision staff.

The Federation and the Association filed their complaint on June 13, 1979, challenging the creation and implementation of Sypes Canyon Planning and Zoning Districts Nos. 1 and 2 (Copeland and Craig). While the action was pending, Copelands filed an application for approval by the Gallatin County Commissioners of a subdivision plat, which application was set for hearing on July 5, 1979. The scheduled subdivision hearing was preliminarily enjoined by the presiding district judge. Meanwhile, the Copelands intervened in the pending action and filed a counterclaim against the plaintiffs for damages. The counterclaim was ultimately dismissed by the District Court after trial. The intervenors filed a cross-appeal on the dismissal of the counterclaim, which appeal

-4-

was dismissed by agreement of counsel. The trial of all the issues except the counterclaim was held before Judge W. W. Lessley on August 15 and 28, 1979. On September 15, 1979, the District Court issued its findings of fact and conclusions of law and based on these, entered a judgment from which this appeal arises.

The issues we address in this case are these:

(1)  The defendants contend that under section 76-2-110, MCA, the Federation and the Association should have appealed from the decisions of the Board of County Commissioners within 30 days, and since they did not do so, the commissioners argue that the District Court was without jurisdiction to hear the plaintiffs' appeals.

(2)  The defendants further contend that under section 27-19-104, MCA, in actions where public interest groups seek injunctive relief, they are required by that statute, if there is an injury to a property or civil right of an individual member of the Association, distinguishable from an injury/public generally, to set forth in the complaint the names and addresses of the injured members and a statement of the injury. The Federation and the Association contend that section 27-19-104, MCA, is unconstitutional because it denies them equal access to the courts and impairs their right to freedom of association.

(3)  The Federation and the Association contend that the Planning and Zoning Districts established in this case are invalid as contrary to the public interest in orderly planning and zoning, and because they are not based on a comprehensive plan, nor on reasonably adequate planning information, and because the districts constitute spot zoning.

(4)  The Federation and the Association further contend that the "rezoning" of Sypes Planning and Zoning District

-5-

No. 1 (Copeland) is invalid because the commission failed to follow the statutory requirements enumerated in Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551.

The county commissioners adopted a Planning and Zoning District for the Copeland parcel on March 2, 1979, and for the Craig property on March 22, 1979. The Federation and Association filed their complaint on June 13, 1979. It is on this basis that the county commissioners contend that under section 76-2-110, MCA, the action should have been filed within 30 days. Since plaintiffs did not do so, the commissioners argue that the District Court was without jurisdiction to hear what were in effect appeals from the actions of the County Commissioners in adopting the Planning and Zoning Districts.

The Federation and Association did not appeal from the rulings of the county commissioners in a direct sense. Their action is for declaratory judgment, filed June 13, 1979. The county filed a motion to dismiss on June 28, 1979 without specifying as a ground for dismissing the complaint the appeals limitations statute. The Copelands intervened in the action on July 16, 1979, and the answer to their complaint did not set out as an affirmative defense the appeal limitations statute. The subsequent answer of the county officers did not raise as an affirmative defense the provisions of section 76-2-110, MCA. The court, on July 30, 1979, set down the cause "for total hearing" on August 15, 1979. On the latter date, defendants filed a written motion to dismiss the appeal on the ground that the time limitation of section 76-2-110, MCA, had not been complied with. The District Court denied the motion apparently on the ground that it was untimely raised. The District Court was correct.

-6-

The proper method of raising the question of a timely appeal is by an affirmative defense pleaded in an answer to the complaint. Rule 8(c), M.R.Civ.P. Since the issue was not properly raised below, we will not consider it here.

The county commissioners also contend that under section 27-19-104, MCA, it was the duty of the plaintiffs, as public interest groups, to allege in their complaint an injury to the property or to a civil right of the individual members of the association, distinguishable from an injury to the public generally, and to set forth in the complaint the names and addresses of the injured members and a statement of the injury, in order to obtain injunctive relief. The District Court found that the Federation and the Association did in fact have standing to file the complaint for injunctive relief, without supplying the names and addresses and a statement of the respective injuries of the members of the Association.

The District Court was correct in so holding. The plaintiffs allege in their complaint "for purposes of the present action, plaintiffs allege injury in fact which is similar to injuries suffered by other members of the public generally." The plaintiffs therefore brought themselves within the standing-to-sue statute, section 27-19-104, MCA, which provides as follows:

> "Whenever an action for injunctive relief
> is initiated by a citizen's group or other
> public interest association and it appears
> by the complaint that there is an injury to
> a property or civil right of individual
> members of the association, which injury
> is distinguishable from an injury to the
> public generally, the names and addresses
> of injured members and a statement of the
> injuries shall be provided in the complaint.
> An injunction may not be granted unless such
> information is provided in the complaint."

The plaintiffs allege in their complaint essentially that their alleged injury was coextensive with the injury of the public generally. No damages for individual injuries are sought in the complaint. The organizations therefore had standing to sue under the statute. Since the District Court allowed the Federation and Association to prosecute their action for injunction, there is no necessity to reach the constitutional question whether section 27-19-104, MCA, denies the plaintiffs in this case equal access to the courts or impairs their right to freedom of association.

We turn now to the contention of the Federation and the Association that the county commissioners acted unlawfully in adopting the Sypes Canyon Planning and Zoning Districts.

Chapter 2, Title 76, MCA, contains the statutes that relate to planning and zoning. Chapter 2 is divided into three parts. Part 1 (sections 76-2-101 through -112, MCA) relates to the establishment of county planning and zoning commissions. It is under Part 1 that the county commissioners acted in this case. Part 2 (sections 76-2-201 through -228, MCA) relates to county zoning. This part applies only to those cases where the governing body has adopted a comprehensive development plan for the jurisdictional areas involved. Part 3 (sections 76-2-301 through -328, MCA) relates to municipal zoning, with which we are not here concerned.

When we examine Part 1, Chapter 2, Title 76, MCA, in greater detail, we find that section 76-2-101, MCA, provides that "whenever the public interest or convenience may require" upon petition of 60 percent of the freeholders affected thereby, the Board of County Commissioners is authorized and empowered to create a planning and zoning district and to appoint a commission consisting of five members. No such

-8-

district may be created in an area which has been zoned by an incorporated city.

Under section 76-2-102, MCA, the planning and zoning commission, though appointed by the Board of County Commissioners, is designated by statute to consist of the three county commissioners, the county surveyor, and the county assessor. Under section 76-2-103, MCA, this planning and zoning commission has such powers as are appropriate to enable it to fulfill its functions, to promote county planning, and to carry out the purposes of Part 1, Chapter 2, Title 76, MCA.

Once the planning and zoning commission in a planning and zoning district is established, it then becomes the duty of the planning and zoning commission to adopt a development pattern for the physical and economic development of the planning and zoning district under section 76-2-104, MCA. A pertinent part of section 76-2-104 provides:

> "(2) Such development pattern, with accompanying maps, plats, charts and descriptive matter, shall show the planning and zoning commission's recommendations for the development of the districts, within some of which it shall be lawful and within other of which it shall be unlawful to erect, construct, alter, or maintain certain buildings or to carry on certain trades, industries, or callings or within which the height and bulk of future buildings and the area of the yards, courts, and other open spaces and the future uses of the land or buildings shall be limited and future building setback lines shall be established."

Section 76-2-106, MCA, provides for the adoption by the Planning and Zoning Commission of the development district or any change therein after public notice and hearing.

In the case before us, the statutory procedures set forth in Part 1, Chapter 2, Title 76, MCA, as we have set them out above, were followed by the Board of County Commissioners, and subsequently by the Planning and Zoning

-9-

Commission in each district. In each, there was a petition by 60 percent (actually 100 percent) of the freeholders; the action of the Board of County Commissioners creating the Planning and Zoning District based on each petition; the appointment of the Planning and Zoning Commission; the adoption of development pattern by the Planning and Zoning Commission; and in the case of the Copeland District, an amendment in May 1979 of their Planning and Zoning District amending the initial zoning ordinance so as to provide a greater density of lots on a portion of their lands.

The Federation and Association argue that the Sypes Districts are invalid because they are not based on a comprehensive plan. They contend that we must read into Part 1, Chapter 2, Title 76, MCA, the provisions taken from Part 2 of that Chapter (section 76-2-203, MCA), which set out the criteria and guidelines for zoning regulations where county zoning under Part 2 is concerned. A prerequisite to zoning under section 76-2-203 is that zoning regulations shall "be made in accordance with a comprehensive develop- ment plan". Allen v. Flathead Cty. (1979), ____Mont. ____, 601 P.2d 399, 36 St.Rep. 1839. Otherwise, the Federation and the Association contend, the establishment here of the districts and the adoption of the development patterns are not based on rational criteria and are defective on con- stitutional grounds because the zoning decisions are either inconsistent with governing statutory standards or are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. They point to the reports of the Gallatin County Subdivision staff which indicate among other things, that in the Sypes Districts, there was little or no information by

-10-

which to determine traffic needs or water availability when the Districts were created and that essentially, these could come only from a comprehensive plan. The Federation and Association are equally insistent that we should turn aside the adoption of the Planning and Zoning Districts here because there was no evidence before the Board of County Commissioners or realistic finding by the District Court that the "public interest and convenience" required the establishment of the Districts.

The evidence in this case is that no comprehensive plan has been adopted which would affect the jurisdictional areas in which the Sypes Canyon Planning and Zoning Districts were established. We need only point out that while the adoption of a comprehensive plan is a prequisite to action under Part 2, Chapter 2, Title 76, MCA, there is no statutory requirement for such a comprehensive development plan when the county commissioners act under Part 1, Chapter 2, Title 76, MCA.

In City of Missoula v. Missoula County (1961), 139 Mont. 256, 362 P.2d 539, this Court found the statutes which are the forerunners of Part 1, Chapter 2, Title 76, MCA, valid as against an attack that the statutes constituted an unlawful delegation of legislative power. In the decision, this Court found that the statute validly delegated administrative authority and that its provisions were sufficiently clear, definite and certain to enable the agency to know its rights and obligations, speaking particularly of the forerunner of section 76-2-104, MCA.

In Doull v. Wohlschlager (1963), 141 Mont. 354, 377 P.2d 758, this Court, in construing the same sections, the forerunners of Part 1, Chapter 2, Title 76, MCA, determined that a county-wide comprehensive plan was not necessary

prior to the adoption of a county planning and zoning district, and further, that in making and adopting a development district, it was not necessary that there be created a county-wide development pattern.

Realizing the effect of the decision in Doull, the plaintiffs contend that the statutes which now comprise Part 2, Chapter 2, Title 76, MCA, did not come into effect until 1963, whereas those statutes comprising Part 1 of that chapter had been in effect since 1953, and were the statutes in effect at the time of the Doull decision. Therefore, contend the plaintiffs, the Montana court did not consider whether it should construe Part 1 and Part 2 of Chapter 2, Title 76, MCA, in pari materia; and that this Court, to avoid unconstitutional implications relating to lack of due process, should consider the provisions of Part 2 as in pari materia with Part 1, and require that the criteria and guidelines found in section 76-2-203, MCA (contained in Part 2) should be the guidelines to be followed by the Board of County Commissioners and by the Planning and Zoning Commission when they act under Part 1.

In City of Missoula v. Missoula County, supra, this Court determined that there were sufficient guidelines in section 76-2-104, MCA, to sustain the constitutional validity of the statute. We said:

> "We shall not quote the entire act, but with respect to the procedure, the law provides definite outlines and limitations. The zoning district may come into being only upon petition of sixty percent of the free-holders in the area. The adoption of the development district must be by a majority of the Commission, after definitely prescribed public notice and public hearing. The resolution must refer to maps, charts, and descriptive matters. In other words, quite adequate procedural matters are contained in the act itself . . ." 139 Mont. at 260, 261, 362 P.2d at 541.

-12-

When the county commissioners adopt a Planning and Zoning District under section 76-2-101, MCA, so as to establish the boundaries of the District, they take but the first step. If they were to do nothing further, their action would be useless. The establishment of the boundaries is but preliminary to the adoption of the development pattern under section 76-2-104, MCA. It is at the adoption stage of the development pattern that guidelines are established under the statutes for the administrative functions of the County Planning and Zoning Commission, with provisions for notice and public participation included.

The provisions of section 76-2-101, MCA, authorizing the establishment of boundaries of a Planning and Zoning District, must be read in conjunction with the provisions of section 76-2-104, MCA, providing for the adoption of a development pattern. When read together, we must conclude, as this Court previously concluded in City of Missoula v. Missoula County, supra, that these statutes are in fact constitutional and that such constitutionality extends to the acts of the county commission in establishing the boundaries of the Planning and Zoning Districts in this case.

We must be conscious of the result if we should hold the procedures under section 76-2-101, MCA, unconstitutional for lack of statutory guidelines. It would then become impossible for a landowner, unless he could find an exemption, to change the agricultural use of his land or to subdivide and convey tracts from his land where the county, for whatever reason, had not adopted a comprehensive development plan for the jurisdictional area involved. The legislature must have contemplated the establishment of Planning and Zoning Districts that occurred here in the absence of the

-13-

adoption of a comprehensive development plan. Plaintiffs and amici argue that the legislature, by expanding the potential jurisdiction of the county commissioners under Chapter 273, Laws of 1971, so as to become possibly coextensive with the boundaries of the entire county thereby expressed a legislative mandate that the guidelines of section 76-2-203, MCA, be imposed on the determination of jurisdictional areas under section 76-2-101, MCA. Section 76-2-101, and its following statutes have been in effect essentially since 1953, without further amendment of the legislature, and the subsequent parts of the Planning and Zoning Statutes have been added to Part 1, rather than enacted in lieu of Part 1. We must therefore deem that the legislative intent is that Part 1 is to have its own meaning and effect. Fletcher v. Paige (1950), 124 Mont. 114, 119, 220 P.2d 484, 486.

The Federation and Association contend just as strongly that under section 76-1-101, MCA, a Planning and Zoning District may be created only when the "public interest or convenience" may require and that there was no evidence before the county commissioners, nor before the District Court, to justify a finding by either the county commissioners or the Court, that the Planning and Zoning Districts should be created.

The District Court found that the public interest and convenience of the statute was met in that "by the creation of the zoning district, the Copelands substituted the County Commissioners for themselves as the individuals to have the ultimate control over the development of the real property in the zoning district. By that substitution the residents of Gallatin County are assured adequate hearings prior to planning and development in the zoning district and

-14-

legitimate access to their own elected officials who ultimately controlled the development within the zoning district." This finding of the District Court the plaintiffs attack as bogus and transparent because Montana's sub-division laws provide ultimate control in the county commissioners when the subdivision plats are filed for approval under section 76-3-601, MCA. We do not negate this conclusion of the District Court as to the public interest being thereby served. It is plain that section 76-2-104, MCA, when read in conjunction with section 76-2-101, MCA, does involve a transfer to the Planning and Zoning Commission by the landowner of full authority as to what uses shall be made of the lands in the district, what kinds of buildings shall be allowed, and what future uses of the lands shall be limited. This is the stage at which the public interest in orderly development is protected, and it is a stage in which the public may participate at a hearing after due notice. Section 76-2-106, MCA.

Another argument of the Federation and Association against the validity of the Planning and Zoning Districts is that the Board of County Commissioners gave little or no consideration to wildlife or wildlife habitat existing on the parcels which became the Sypes Canyon Districts. Their contentions about wildlife were strong enough that the District Court regarded them as "reindeer games" and found occasion to quote the first sixteen bars of "Rudolph the Red-Nosed Reindeer" in its opinion supporting its findings in this case.

The case of In Re the Red-Nosed Rudolph has not attained a noticeable level of acceptance as legal pre-cedent. We point out, however, that the plaintiffs have not been foreclosed from considerations of wildlife in this

-15-

matter. When subdivision plats relating to the Sypes Canyon Planning and Zoning Districts are presented for approval, at that point the criteria for local government review set forth in section 76-3-608, MCA, come into play. Those criteria include, among other things, a determination of the effects on wildlife and wildlife habitat.

In essence, what we are saying respecting the contentions of the plaintiffs is that when dealing with the police power to protect the public safety and welfare, it is for the legislature to decide what regulations are needed. McCallin v. Walsh (1978), 64 A.D.2d 46, 407 N.Y.S.2d 852. For due process purposes, governmental action does not have to be the only alternative or even the best alternative for the procedures to be reasonable and constitutional. Bell v. Wolfish (1979), 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447.

The Federation and Association next contend that in the adoption of the Sypes Districts, the county and the landowners have illegally circumvented the Montana Subdivision and Platting Act.

This contention comes about because in adopting the development patterns for the Copeland lands, the county commissioners first developed a density of 28 lots for the parcel, and later amended the zoning regulations so as to permit the same number, 28 lots, but permitted these lots to be platted in one-acre tracts. This had the effect of increasing the density of lots by lowering the acreage for which a lot could be subdivided. The Federation and Association maintain that since the greater density was established in the development pattern, this necessarily fixed the density that will be considered by the county commissioners when the subdivision plats are presented for approval. The county commissioners in testifying before the District

-16-

Court admitted that the density would probably remain unchanged when they considered the subdivision plats. We note that the Copelands have filed a subdivision plat which has been approved during the pendency of this litigation.

Again we point out that many of the considerations for which the Federation and Association are contending here as to criteria to be considered in approving Planning and Zoning Districts are available to those organizations at the time the subdivision plats are presented for approval. Unless a subdivision is entitled to summary review (section 76-3-505, MCA) or other exemption, it must be examined by the governing body under section 76-3-604, MCA, to determine whether it conforms to the local master plan, if one has been adopted, and to the criteria of the subdivision chapter as set out in section 76-3-608, MCA. The governing body must make written findings of fact which weigh among other things, expressed public opinion, the effects on natural environment, the effects on wildlife and wildlife habitat, and the effect on public health and safety. At the time of review of the proposed subdivision plat, under section 76-3-608, MCA, the effect of the proposed density of lots on wildlife and wildlife habitat is an issue to be decided by the local governing bodies if submitted at the hearing required by section 76-3-605, MCA. The issue of density therefore has not been foreclosed, because it is open for consideration by the Commission in reviewing the proposed subdivision plat for the "effects on wildlife and wildlife habitat." Section 76-3-608(g), MCA.

The next contention of the Federation and Association is that in establishing the Planning and Zoning Districts here the county engaged in "spot zoning." In State ex

-17-

rel. Gutkowski v. Langhor (1972), 160 Mont. 351, 502 P.2d 1144, we defined "spot zoning" as follows:

> ". . . spot zoning . . . is the 'process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners.'" 160 Mont. at 353, 502 P.2d at 1145.

The facts on which the spot zoning argument is made do not seem to be in dispute. There is Grandview Heights Subdivision south of Sypes Canyon District No. 2 where the parcels average 3.8 acres; the Craigs' property is between the Copeland property and Grandview Heights, but the Craigs have abandoned their subdivision plans and have sold in 2 twenty-acre and 4 ten-acre parcels; Wheatland Hills subdivision is approximately one mile away and does not border the Sypes Districts; all the land east of the Sypes Districts is in public ownership and not subdivided; north of the Sypes District is a 60 acre unit, though platted in smaller units; south of the Sypes Districts the land is platted in 3 five-acre parcels and 1 two-acre parcel; no areas other than the two Sypes Districts are zoned in the immediate vicinity.

On these facts, the Federation and the Association contend that the allowance of the Sypes Districts amounts to spot zoning. They contend that the zoning districts and the density requirements adopted therein differ sharply from the surrounding area and that this was pointed out by the Gallatin County Subdivision staff to the county commissioners. Again the argument is made that such zoning as occurred in the Sypes Canyon Planning and Zoning Districts should be done only after the adoption of a comprehensive plan.

In accepting the legality of procedures under Part 1, Chapter 2, Title 76, MCA, as we have stated we

-18-

are bound to accept the consequences that reasonably flow therefrom. One of the consequences is that parcels of 40 acres or more are entitled to be designated as planning and zoning districts under section 76-2-101, MCA, without being considered "spot zoning". A statute will not be interpreted to defeat its evident object or purpose; the objects sought to be achieved by the legislation are prime consideration in interpreting statutes. Doull v. Wohlschlager, supra.

We have found no case, nor have the parties led us to one, which has held that the adoption of a planning and zoning district within an otherwise unplanned area constitutes spot zoning.

The final contention of the Federation and the Association is that the County Planning and Zoning Commission acted illegally in rezoning Sypes Canyon Planning and Zoning District No. 1. As we have indicated, the effect of the rezoning was to increase the density allowable on a portion of that district.

Lowe v. City of Missoula, supra, is advanced by the plaintiffs as supporting their contention. In Lowe, this Court reversed the District Court and set aside the city action in granting a zone change from residential to restricted one-family residential status. Our reversal was based on the failure of the city council to follow the criteria set forth in the municipal zoning section, section 76-2-304, MCA.

The logic expressed by the plaintiffs in support of their claim of illegality of the rezoning is that Lowe decided that municipal rezoning must include a consideration of the criteria set forth in section 76-2-304, MCA; that with respect to county zoning, the criteria set forth in

-19-

section 76-2-203, MCA, virtually identical to section 76-2-304, MCA, must be considered when county rezoning is undertaken; therefore, plaintiffs contend that either criteria must be considered mandated when <u>district</u> rezoning occurs under Part 1, Chapter 2, Title 76, MCA.

We are foreclosed from mandating the criteria from other parts of the Planning and Zoning Statutes to apply to Part 1, Chapter 2, Title 76, MCA, for the reason that section 76-2-106, MCA, provides not only for the original adoption of the Planning and Zoning Development District, but that "any change therein may be in whole or in part" adopted by the affirmative vote of the majority of the Planning and Zoning Commission. Accordingly, the Planning and Zoning Commission, in amending or changing the Planning and Zoning District, need only refer to the criteria set forth in section 76-2-104, that is, the guidelines applying to the original establishment of the development pattern. Under the latter section, the Planning and Zoning Commission has full power to determine "the area of the yards, courts, and other open spaces and the future uses of the land. . ." Section 76-2-104(2), MCA. We are not at liberty to set the exercise of that discretion of the Planning and Zoning Commission aside. A judgment of the District Court upholding the discretion of zoning officials will not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P.; Melton v. City of Durant (Okla. 1974), 521 P.2d 1372.

In their brief filed with this Court, amici curiae have set forth other grounds attacking the constitutionality of Part 1, Chapter 2, Title 76, MCA. We have respectfully declined to discuss the extended or enlarged issues on constitutionality presented by amici. Since amici curiae

-20-

are not parties and cannot assume the functions of parties, nor create, extend or enlarge issues, we have considered the briefs of amici only insofar as as they coincide with the issues raised by the parties to the action. See Long v. Odell (1962), 60 Wash.2d 151, 372 P.2d 548; City of Phoenix v. Phoenix Civic Aud. & Con. Cent. Ass'n. (1965), 99 Ariz. 270, 408 P.2d 818, reh.den. 412 P.2d 43.

The District Court held in essence that the county commissioners and the Planning and Zoning Commission had acted lawfully in establishing the Sypes Canyon Planning and Zoning District Nos. 1 and 2, and the amendment to Sypes Canyon Planning and Zoning District No. 1, and so refused injunctive and declarative relief to the plaintiffs. We find that the rulings of the District Court in this regard are correct. In view of our holding, we deny the pending motion of the Federation and Association for an injunction pendente lite against further subdivision of the districts. The judgment of the District Court is affirmed.

_____
John L. Shehy
Justice

We Concur:

_____
Frank I. Haswell
Chief Justice

_____
Gene B. Daly

_____
John Conway Harrison

_____
Daniel J. Shea
Justices

-21-